FILED

IN THE CIRCUIT COURT, TWENTIETH JUDICIAL CIRCUIT 2012 SEP 13  PM 3: 42
IN AND FOR LEE COUNTY, FLORIDA

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

SHAINA A. RUTHERFORD, Individually )
and on Behalf of All Others Similarly )
Situated, )
                       )
           Plaintiff, )
                       )
    v. )
                       )
ZOOM TAN, INC.; ZOOM TAN, LLC; )
ZOOM TAN FRANCHISING, LLC; and )
CLUB TEXTING, INC. d/b/a EZ Texting, )
Inc., )
                       )
           Defendants. )

**12 - CA - 002491**
**Judge: Kyle, Keith R**
Case No. _____

CLASS REPRESENTATION

DEMAND FOR JURY TRIAL

2: 12 -cV - 509 -FtM-29DNF

## COMPLAINT FOR INJUNCTION AND DAMAGES

Plaintiff Shaina A. Rutherford (hereinafter "Plaintiff"), brings this class action complaint against Defendants Zoom Tan, Inc., Zoom Tan, LLC, and Zoom Tan Franchising, LLC (hereinafter collectively "Zoom Tan"), and Club Texting, Inc. d/b/a EZ Testing, Inc. (hereinafter "Club Texting") (collectively referred to as "Defendants") to stop Defendants' practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by their conduct.  Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE CASE

1.      In a recent effort to promote the sale of its tanning services, Zoom Tan, engaged Club Texting, a mobile technology company, to conduct an especially pernicious form of marketing: the unauthorized transmission of advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

{00030631.DOCX ; 3}

2.      By effectuating these unauthorized text message calls (hereinafter, "wireless spam"), Defendants have caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3.      In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("47 U.S.C. § 227"), which prohibits unsolicited voice and text calls to cell phones.

4.      On behalf of the class, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## PARTIES

5.      Plaintiff Shaina A. Rutherford is, and all times mentioned herein was, an individual citizen and resident of the State of Florida.

6.      Defendant Zoom Tan, Inc. is a Florida corporation with its principal place of business at 5185 Castello Drive, Suite 4, Naples, Florida 34103.

7.      Defendant Zoom Tan, LLC is a Florida limited liability company with its principal place of business at 5185 Castello Drive, Suite 4, Naples, Florida 34103.

8.      Defendant Zoom Tan Franchising, LLC is a Florida limited liability company with its principal place of business at 5185 Castello Drive, Suite 4, Naples, Florida 34103.

9.      Defendants Zoom Tan collectively operate at least 38 tanning salons throughout the United States, including Florida and New York. Defendants Zoom Tan, according to their

website, are opening tanning salons in numerous states throughout the country. At all relevant

times herein, Defendants Zoom Tan were each a "person" as defined by 47 U.S.C. § 153(32).

10.     Defendant Club Texting is a text message marketer doing business as EZ Testing,

Inc. Defendant Club Texting is a New York corporation with a principal place of business at 100

Hudson Street, 2nd Floor, Hoboken, New Jersey, 07030. Defendant Club Texting offers its text

message marketing services nationwide. At all relevant times herein, Defendant Club Texting

were each a "person" as defined by 47 U.S.C. § 153(32).

## JURISIDCTION AND VENUE

11.     Jurisdiction over Defendants exists and is proper in the State of Florida.

12.     At all relevant times herein, without limiting the generality of the foregoing,

jurisdiction exists over Defendants (directly or through agents who at the time were acting with

actual and/or apparent authority and within the scope of such authority) in each of the following

respects:

      a.     Defendants Zoom Tan have their principal place of business in Florida and

is a citizen of Florida;

      b.     All Defendants transact business in the State of Florida and their conduct

in Florida forms a significant basis for the claims asserted by the proposed Plaintiff Class;

      c.     Defendants contract to supply and/or obtain services and/or goods in the

State of Florida;

      d.     Defendants intentionally avail themselves of the benefits of doing business

in the State of Florida; and

      e.     Defendants Zoom Tan offers tanning salon services in the State of Florida,

and, thereby, has purposefully profited from access to this State's markets; and

     f.    Defendant Club Texting offers text message marketing services in the State of Florida and, thereby, has purposefully profited from access to this State's markets.

13.    This putative class action only involves Class Members who are residents of the State of Florida and/or the State of New York, and is brought against Defendants that are citizens of the State of Florida (Zoom Tan) and the State of New York (Club Texting), thus no Federal Diversity Jurisdiction exists.

14.    Venue is proper in Lee County because Plaintiff is located in Lee County. Defendant regularly transactions business in Lee County, including the sale of tanning salon services, and because Defendants' misconduct occurred within Lee County.

15.    This is an action for damages in excess of fifteen thousand dollars ($15,000), exclusive of attorneys' fees and costs.

## COMMON ALLEGATIONS OF FACT

16.    In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

17.    One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

18.    An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being

received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

19.    Unlike more conventional advertisements, wireless spam actually costs its recipients money, because cell phone users must frequently pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

20.    Over the course of an extended period beginning as early as mid-2011, Defendants and their agents directed the mass transmission of wireless spam to the cell phones nationwide of what they hoped were potential customers of Defendants Zoom Tan "spray tan" tanning salon services.

21.    For instance, on or about July 29, 2012 at 12:03 p.m. ET, Plaintiff's cell phone rang, indicating that a text call was being received.

22.    The "from" field of such transmission was identified cryptically as "313-131," which is an abbreviated telephone number known as an SMS short code licensed and operated by Club Texting and its agents. The body of such text message read:

> Zoom Tan is offering a $1 spray tan
> today only AND it's the last day of our
> last BOGO sale!  Dont (*sic*) miss it!  Stores
> open 12p-6p.  Send to all your
> friends NOW!

23.    Similar messages were received by Plaintiff on July 26, 2012, July 4, 2012, June 24, 2012, May 28, 2012, and May 13, 2012.  Further, Plaintiff has been receiving at least messages such as the one described in paragraph 22 nearly every month since the middle of 2011.

24.    Plaintiff alleges that defendants would distribute an unsolicited spam text message en mass each holiday, and each time Defendants Zoom Tan would open a new location.  Each time, the "from" field of the transmission would identify "313-131" as the sender, which, as previously stated, is licensed and operated by Club Texting and its agents.

25.    Defendants' use of an SMS short code enabled Defendants' mass transmission of wireless spam to a list of cellular telephone numbers.  Further, upon information and belief, Defendant Club Texting uses SMS short codes to offer its mass text message transmission services to individuals and companies throughout out the United States.

26.    At no time did Plaintiff, who terminated her contractual relationship with Defendants Zoom Tan on or about May 5, 2010, consent to the receipt of the above-referenced message or any other such wireless spam text messages from Defendants.

## CLASS REPRESENTATION ALLEGATIONS

27.    Plaintiffs bring this action pursuant to Rules 1.220(b)(2) and 1.220(b)(3) of the Florida Rules of Civil Procedure on behalf of themselves and a classes defined as follows:

### Nationwide Class

All individuals in the United States that received unsolicited and unauthorized text message advertisements from Defendants Zoom Tan through an SMS short code licensed and operated by Defendant Club Texting.

### Florida Subclass

All residents of the State of Florida that received unsolicited and unauthorized text message advertisements from Defendants Zoom Tan through an SMS short code licensed and operated by Defendant Club Texting.

28.    The term "Class" whether in singular or plural context, shall refer to the Nationwide Class and the Florida Subclass.

29.    Defendants and their employees or agents are excluded from the Class.

30.     Plaintiff, on information and belief, alleges that the Class members number in the thousands, such that joinder of all members is impracticable.

31.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff, nor her counsel, has any interest adverse to those of the other members of the Class or each other.

32.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

33.     Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class in transmitting the wireless spam at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

34.     The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to Plaintiff and to all of the other members of the Class as a result of the transmission of the wireless spam alleged herein. Plaintiff and the other Class members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct as a result of the transmission of the wireless spam.

35.     There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

(a)     whether the wireless spam distributed by the Defendants violates 47 U.S.C. § 227;

(b)     whether the Class members are entitled to treble damages based on the willfulness of Defendants' conduct; and

(c)     whether the conduct described above violated the Class's right to privacy.

### FIRST CLAIM FOR RELIEF
### (Violation of 47 U.S.C. § 227: On behalf of the Class)

36.     Plaintiff hereby incorporates by reference the foregoing allegations in paragraphs 1 through 34 as if fully set forth herein.

37.     Defendants made unsolicited commercial text calls, including the message referenced in paragraph 22, to the wireless telephone numbers of the Plaintiffs and the Class. Each such text message call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. By using such equipment, Defendants were able to effectively send thousands of text messages simultaneously to lists of thousands of wireless phone numbers of consumers without human intervention.

38.     These text calls were made en masse through the use of a short code and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam.

39.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, the members of the Class suffered actual damages by having to pay their respective wireless carriers for the text messages and, under section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500.00 in damages for each violation of such act, and an injunction to prevent further violations.

40.     Because Defendants had knowledge that Plaintiff and the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shaina A. Rutherford, on behalf of herself and the Class, prays for the following relief:

A.     An order certifying the Nationwide Class and Florida Subclass as defined above;

B.     An award of actual and statutory damages;

C.     An injunction requiring Defendants to cease all wireless spam activities;

D.     An award of reasonable attorneys' fees and costs; and

E.     Such further and other relief as the Court deems reasonable and just.

//

//

//

//

//

//

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Dated: August 21, 2012

Kenneth G. Gilman (FBN: 0340758)
Thomas E. N. Shea (FBN: 0084676)
GILMAN LAW LLP
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL 34134
Telephone: (239) 221-8301
Facsimile: (239) 676-8224
kgilman@gilmanpastor.com
tshea@gilmanpastor.com

*Attorneys for Plaintiff and Proposed Class*