**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

| | |
|---|---|
| SHAINA A. RUTHERFORD, Individually, and on Behalf of All Others Similarly Situated, | ) ) ) ) |
| Plaintiff, | ) Case No. 2:12-cv-00509-JES-DNF |
| v. | ) ) |
| | ) **CLASS ACTION** |
| ZOOM TAN, LLC; ZOOM TAN, INC.; ZOOM TAN FRANCHISING, LLC; and CLUB TEXTING, INC. d/b/a EZ TEXTING, INC. | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) ) ) |

**FIRST AMENDED COMPLAINT**
**FOR INJUNCTION AND DAMAGES**

Plaintiff Shaina A. Rutherford (hereinafter "Plaintiff" or "Rutherford"), brings this class action complaint against Defendants Zoom Tan, LLC, Zoom Tan, Inc., and Zoom Tan Franchising, LLC (hereinafter collectively "Zoom Tan") and Defendant Club Texting, Inc. d/b/a EZ Texting, Inc. (hereinafter "Club Texting") (hereinafter collectively "Defendants") to stop Defendants' practice of making unsolicited text message calls to cellular telephones, and to obtain redress for all persons injured by their conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorney.

{00031078.DOCX ; 2}

## NATURE OF THE CASE

1. In a recent effort to promote the sale of its tanning services, Zoom Tan and Club Texting joined together to engage in an especially pernicious form of marketing: the unauthorized transmission of advertisements in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

2. By making these unauthorized text message calls (hereinafter, "wireless spam"), Defendants have caused consumers, actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3. In order to redress these injuries, Plaintiff, on behalf of herself and a nationwide class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), which prohibits, among other things, unsolicited voice and text calls to cell phones without first obtaining prior express consent to make the call.

4. On behalf of the class, Plaintiff seeks an injunction requiring Defendants to cease all wireless spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## PARTIES

5. Plaintiff Shaina A. Rutherford is, and all times mentioned herein was, an individual citizen and resident of the State of Florida.

6. Defendant Zoom Tan, LLC is a Florida limited liability company with its principal place of business at 5185 Castello Drive, Suite 4, Naples, Florida 34103.[1]

---

[1] Defendant Zoom Tan LLC lists this address as its principal place of business with the Florida Division of Corporations. Upon attempting to serve Defendant Zoom Tan LLC, Process Server Ron Haener reported that this address was a vacant commercial property with no furniture or registered agent during the applicable hours.

7. Defendant Zoom Tan, Inc. is a Florida corporation with its principal place of business at 5185 Castello Drive, Suite 4, Naples, Florida 34103.[2]

8. Defendant Zoom Tan Franchising, LLC is a Florida limited liability company with its principal place of business at 5185 Castello Drive, Suite 4, Naples, Florida 34103.[3]

9. According to their website, Defendants Zoom Tan collectively operate at least 38 tanning salons throughout the United States, including Florida and New York. According to their own website, Defendants Zoom Tan are opening tanning salons in numerous states throughout the country.

10. Defendant Club Texting is a text message marketer doing business as EZ Texting, Inc. Defendant Club Texting is a New York corporation with its principal place of business at 100 Hudson Street, 2nd Floor, Hoboken, New Jersey, 07030. Defendant Club Texting makes *en masse* text message calls on behalf of clients throughout the country and charges a fee for making such *en masse* text message calls. Upon information and belief, Club Texting previously made, and continues to make, *en masse* text message calls on behalf of Defendants Zoom Tan for each of Zoom Tan's twenty-eight (28) locations in Florida, as well as Zoom Tan's fourteen (14) locations in New York.

11. At all relevant times herein, Defendants were each a "person" as defined by 47 U.S.C. § 153(32).

---

[2] Defendant Zoom Tan, Inc. lists this address as its principal place of business with the Florida Division of Corporations. As noted above, Process Server Ron Haener reported that this address was a vacant commercial property with no furniture or registered agent during the applicable hours.

[3] Defendant Zoom Tan Franchising, LLC lists this address as its principal place of business with the Florida Division of Corporations. As noted above, Process Server Ron Haener reported that this address was a vacant commercial property with no furniture or registered agent during the applicable hours.

**JURISIDCTION AND VENUE**

12.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

13.     The Court has personal jurisdiction over Defendants Zoom Tan as each Zoom Tan entity is authorized to conduct business, and conducts business, as either a Florida corporation or a Florida limited liability company, as the case may be.  Further, according to the Florida Division of Corporations, each Zoom Tan entity lists its principal place of business as located in Naples, Florida.

14.     The Court has personal jurisdiction over Defendant Club Texting pursuant to Federal law, Section 48.193(2), Florida Statutes, and due process because Club Texting is engaged in substantial and non-isolated activity by soliciting and engaging in business in this District and throughout the State of Florida, including, but not limited to, making unsolicited spam text message calls *en masse* on behalf of its continuous and systematic general business contacts, such as Zoom Tan.  Specifically, upon information and belief, Defendant Club Texting earns substantial revenue from Defendants Zoom Tan in Florida for making *en masse* unsolicited text message calls on their behalf, targeting potential customers or friends of potential customers for each of Zoom Tan's twenty-eight (28) Florida locations.

15.     By engaging in the text message marketing scheme throughout Florida as described herein, it is reasonable for Defendant Club Texting to expect to be haled into Court in this District, and doing so does not offend traditional notions of fair play and substantial justice.

16. Upon information and belief, Club Texting has other continuous and systematic general business contacts, similar to Zoom Tan, for which it charged a fee for providing the same service of making *en masse* unsolicited text message calls on behalf of and targeting potential customers for such contacts.

17. In the present action, the *en masse* unsolicited spam text message calls made by Club Texting were directed, in substantial part, at Florida residents who may be potential customers of Zoom Tan's twenty-eight (28) Florida locations and were harmed exclusively or primarily in Florida by receiving wireless spam.

18. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because Defendants reside, transact business, are found, or have agents in this District.  Further, a substantial part of the events or occurrences giving rise to the claims alleged occurred in this District.

## COMMON ALLEGATIONS OF FACT

19. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

20. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

21. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device.  When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being

received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

22. Unlike more conventional advertisements, wireless spam actually costs its recipients money because cell phone users must frequently pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

23. Most wireless spam is sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services as television program voting or more benevolent uses, such as making charitable donations.

24. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS message.

25. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

26.     Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.  *See FCC Declaratory Ruling*, 23 FCC Rcd. 559, 565 (¶ 10).

27.     Further, Courts consider text messages as "calls" within the context of the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949 (9th Cir. 2009).

28.     One of the leading trade groups on mobile marketing, the Mobile Marketing Association, publishes guidelines for text message campaigns, which require that every commercial SMS message include an unsubscribe mechanism.  *See* Mobile Marketing Association Global Code of Conduct available at http://mmaglobal.com/policies ("Mobile Marketers must implement a simple termination (opt-out) process so that users can stop receiving messages, and users must be able to exercise their opt-out choice from any message."). The *en masse* unsolicited text message calls described herein do not include an opt-out process.

29.     Over the course of an extended period beginning as early as mid-2011, Club Texting directed the mass transmission of wireless spam to the cell phones nationwide of what they hoped were potential customers of Zoom Tan's "spray tan" tanning salon services.

30.     For instance, on or about July 29, 2012 at 12:03 p.m. ET, Plaintiff's cell phone rang, indicating that a text call was being received.

31.     The "from" field of such transmission was identified cryptically as "313-131," which is an abbreviated telephone number known as an SMS short code, licensed and operated by Club Texting and its agents. The body of such text message read:

> Zoom Tan is offering a $1 spray tan
> today only AND it's the last day of our
> last BOGO sale!  Dont (*sic*) miss it!  Stores
> open 12-p-6p.  Send to all your
> friends NOW!

32. Similar unsolicited text message calls were made to Plaintiff and the other putative class members by Defendant Club Texting *en masse* on behalf of Defendants Zoom Tan on May 13, 2012, May 28, 2012, June 24, 2012, July 4, 2012 and July 26, 2012.

33. Defendant Club Texting made these *en masse* unsolicited text message calls on behalf of Zoom Tan using an automatic telephone dialing system, also known as an "auto-dialer." The auto-dialer used by Club Texting had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers. Upon information and belief, Club Texting, on behalf of Zoom Tan, used this auto-dialer to distribute its wireless spam *en masse* to individuals and companies primarily in Florida, but also throughout the United States.

34. Plaintiff has been receiving messages similar to the one described in paragraph 31 nearly every month since the middle of 2011. At no time did Plaintiff provide express consent to receive the above-referenced text message call or any other wireless spam from Club Texting or Zoom Tan. In fact, Plaintiff terminated, in writing, any contractual or business relationship, either express or implied, with Zoom Tan on or about May 5, 2010. Plaintiff has never had any contractual or business relationship, either express or implied, with Club Texting.

35. Notwithstanding Plaintiff's lack of prior express consent to receive the text message call, in an attempt to circumvent the restrictions on wireless spam put in place by the TCPA, each unsolicited text message call sent by Club Texting on behalf of Zoom Tan to Plaintiff included text encouraging her to forward the unsolicited text message to her friends, in order to reach individuals with whom neither Club Texting nor Zoom Tan had an existing business relationship with or had received prior express consent from.

36.     Plaintiff alleges that Defendant Club Texting would make an *en masse* unsolicited spam text message call on behalf of Defendants Zoom Tan each holiday, each time Zoom Tan would open a new location, and when Zoom Tan was running various promotions or sales. Each time Plaintiff received an unsolicited spam text message similar to the text message described in paragraph 31, the "from" field of the transmission would identify "313-131" as the sender, which, as previously alleged, is licensed and operated by Club Texting and its agents.

37.     Defendant Club Texting's use of an SMS short code enabled *en masse* transmission of wireless spam to a list of cellular telephone numbers provided by Defendants Zoom Tan. Further, upon information and belief, Defendant Club Texting is compensated for using SMS short codes to make *en masse* text message calls to individuals throughout the United States on behalf of other clients, similar to Zoom Tan. Defendant Club Texting does so without verifying whether any of the recipients of such unsolicited text messages have provided prior express consent to receive the same.

38.     Defendant Club Texting has actual notice that using its equipment and software to make *en masse* text message calls may violate the TCPA when the recipient of such call has not provided his or her prior express consent. This is not a new or novel theory for Defendant. Indeed, Defendant Club Texting recently settled a class action alleging violations of the TCPA for, as in this action, making *en masse* text message calls to individuals without their prior express consent. *See Jepsen v. Club Texting, Inc., et al.*, No. 08- 5508 (E.D. Ill. Sep. 25, 2008) (order granting final approval of class action settlement).

39.     As previously alleged, Club Texting had actual notice that it was violating the TCPA as described herein, and Zoom Tan directed Defendant Club Texting to make the *en masse*

unsolicited text message calls willingly or knowingly. Further, such wireless spam was not sent for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

## CLASS REPRESENTATION ALLEGATIONS

40. This action is brought on behalf of a class consisting of all persons in the United States who received at least one text message call from Defendant Club Texting on behalf of Defendants Zoom Tan wherein said text messages were sent using an automatic telephone dialing system or a device which has the capacity to be used as the same from any short code, website, computer, or other electronic medium and was without the prior express consent of the text message recipient.

41. The members of the putative class may be referred to herein as "the Class."

42. The above-cited class definition excludes Defendants, their legal representatives, assigns, and successors, and any entity in which a Defendant has a controlling interest. Also excluded from the Class is the Judge to whom this case is assigned as well as the Judge's immediate family. Plaintiff reserves the right to amend the above-stated Class definition based upon facts learned in discovery.

43. Plaintiff alleges on information and belief, that the class is so numerous that joinder of all members of the class is impractical. Upon information and belief, Plaintiff alleges that the proposed class as defined herein consists of thousands of individuals.

44. There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The common factual and/or legal issues common to each class member are as follows:

    a. Whether Defendants' conduct is governed by the TCPA;

    b. Whether the spam text messages sent by Defendants violated the TCPA;

   c. Whether the class members as defined herein are entitled to treble damages based upon the willfulness of Defendants' conduct; and

   d. Whether Defendants should be enjoined from engaging in such conduct in the future.

 45. Plaintiff's claim is typical of those of the other class members. All claims are based on the same facts and legal theories.

 46. Plaintiff will fairly and adequately protect the interests of the class. She has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Plaintiff and her counsel have no interests which might cause them not to vigorously pursue this action.

 47. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the Class, thereby making appropriate relief with respect to the Class as a whole.

 48. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

   a. The questions of law or fact common to the members of the class predominate over any questions affecting an individual member; and

   b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

 49. Plaintiff requests certification of a hybrid class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure for injunctive relief and pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure for monetary damages.

## COUNT I
## VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT
### (As to All Defendants)

50. Plaintiff hereby incorporates by reference the foregoing allegations in paragraphs 1 through 49 as if fully set forth herein.

51. Defendants made unsolicited commercial text calls, including the message referenced in paragraph 31, to the wireless cellular telephone numbers of Plaintiff and the Class.

52. Each such text message call was made using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator. By using such equipment, Defendants were able to effectively make thousands of text message calls simultaneously to lists of thousands of wireless cellular phone numbers of consumers without human intervention.

53. These text message calls were made *en masse* through the use of a short code and without the prior express consent of the Plaintiff and the other members of the Class to receive such wireless spam text messages.

54. Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, they have violated 47 U.S.C. § 227(b)(1)(A)(iii) and Plaintiff and the Class have suffered actual damages by having to pay their respective wireless carriers for the text messages, data usage, and/or minute usage. Accordingly under 47 U.S.C. § 227(b)(3)(B), Plaintiff and the Class are each entitled to, *inter alia*, a minimum of $500.00 in damages for each violation of such act, and an injunction to prevent further violations.

55. Because Defendants had knowledge and had actual notice that Plaintiff and the Class did not consent to the receipt of the aforementioned wireless spam, the Court should, pursuant to section 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shaina A. Rutherford, on behalf of herself and the Class, prays for the following relief:

A. An order certifying the Class as defined above;

B. An award of actual and statutory damages;

C. An injunction requiring Defendants to cease all wireless spam activities;

D. An award of reasonable attorneys' fees and costs; and

E. Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: October 26, 2012

Respectfully submitted,

　/s/ Kenneth G. Gilman　
Kenneth G. Gilman (FBN: 0340758)
GILMAN LAW LLP
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL  34134
Telephone:  (239) 221-8301
Facsimile:  (239) 676-8224
kgilman@gilmanpastor.com

*Attorney for Plaintiff and Proposed Class*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing document filed with the Clerk of the Court through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 26, 2012.

                                                 */s/ Kenneth G. Gilman*
                                                 Kenneth G. Gilman